**In re Jonathan Barnes LEAVITT, Debtor.**

**Jonathan Barnes LEAVITT, Appellant,**

v.

**Carlos SOTO, Appellee.**

**BAP No. NC–96–1433–OHRy.**
**Bankruptcy No. 95–47690 TG.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Feb. 20, 1997.

Decided June 4, 1997.

David A. Smyth, Walnut Creek, CA, for Appellant.

Susan H. Handelman, Denise A. Cole, Redwood City, CA, for appellee.

Before: OLLASON, HAGAN and RYAN, Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge:

Jonathan Barnes Leavitt ("Debtor") has appealed an order dismissing his Chapter 13 case [1] with prejudice. **We Affirm.**

### STATEMENT OF FACTS

Debtor filed a Chapter 13 petition on November 6, 1995. Approximately two weeks before, a Judgment on Jury Verdict had been entered against him in San Mateo County Superior Court for fraud, conversion of partnership assets, breach of fiduciary duty and breach of contract, in the amount of $230,-000.[2] The judgment was in favor of Carlos Soto ("Soto"), Debtor's partner in a business known as Great America Waterproofing.[3]

At the time of his bankruptcy, Debtor's major creditors were the IRS, to whom he owed $53,123.23 for 1994 taxes, and Soto. Soto, an unsecured creditor, filed a proof of claim in the amount of $227,898.83.[4] Debtor was earning $72,000 per year, plus business profit of several thousands of dollars. Debtor's first plan proposed to pay $100 per month for the first year, then $1,520 per month for 48 months to the administrative, secured and priority claimants. He proposed zero payment to the unsecured creditors.

According to the plan, Debtor would also make outside monthly car payments of $392.81 for a 1993 Ford Aerostar Van and

---

1. Unless otherwise indicated, references to "Chapter," "Section/ § " or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. This award included general damages of $210,-000 and punitive damages of $20,000. Debtor stipulated to the punitive damages based on the jury's finding that the damages resulted from willful and malicious conduct.

3. The state court complaint was not part of the record, but Soto set forth the underlying facts in his motion to dismiss which were not disputed, and are paraphrased as follows. Debtor, without Soto's knowledge, established a new business with a similar name called Great American Waterproofing, set up a secret post office box, and channeled unknowing clients away from the partnership business and into his new business. Debtor cancelled the business license of Great America Waterproofing and put the partnership out of business, while continuing his own business.

4. Soto filed a proof of secured claim, but, apparently, the claim was unsecured.

$322.63 for a 1993 Chrysler LeBaron. In addition to these vehicles, Debtor listed two pick-up trucks as exempt assets. Transportation costs, not including car payments, were listed as $300 per month. Also listed as expenses were $220 per month for piano lessons and school supplies, and $850 per month for food.

Debtor failed to list on his Chapter 13 schedules his interest in a business known as L-2 Enterprises. He also failed to list an account receivable from his and Soto's company. He understated his assets. For example, he listed $10,000 as the value of his business, Great American Waterproofing, even though the business had been appraised by an expert in the state court trial at a value of over $150,000.

In January of 1996, Soto filed an objection to the plan and a motion to dismiss the Chapter 13 case.[5] Soto contended the plan was filed in bad faith for the improper purpose of avoiding Debtor's debt to Soto. He cited as indicia of bad faith the timing of Debtor's petition so soon after the state court judgment, Debtor's failure to list assets and alleged misrepresentations on his schedules, and the plan's provision for zero cents on the dollar for unsecured creditors including Soto while Debtor's taxes were paid, as were allegedly unnecessary expenses.

At the March 15, 1996 hearing, the bankruptcy court stated that a plan paying less than 30 percent on the dollar to the unsecured creditors would be unacceptable. On March 25, 1996, Debtor filed his first amended Chapter 13 plan. In this plan, Debtor proposed to pay unsecured creditors three percent on the dollar. The monthly payment would be $500 for the first year, and then $1,000 for the next 48 months.

In April, 1996, Soto conducted an examination of Debtor, and learned previously undisclosed facts. A continued evidentiary hearing on Soto's motion to dismiss was held on April 12, 1996. Debtor testified at the hearing, and, according to the transcript, admitted to the following facts:

(1) While he was in bankruptcy, Debtor had been paid the account receivable owed to Great America Waterproofing in the amount of $36,000. Debtor used that money plus an additional $10,000 he obtained from his mother-in-law to purchase a home, and put title in his wife's name. He had not disclosed this income, nor the fact that he bought a home until after he was examined by Soto.

(2) Debtor did not list his business interest in L-2 Enterprises or the income from that business on his schedules. (Debtor testified in his defense that "everyone" including Soto knew about this business.)

(3) Debtor borrowed $12,000 from his mother-in-law but did not list her as an unsecured creditor on his schedules.

(4) Debtor made cash payments of $16,000 to his relatives but did not list these payments in his schedules.

(5) Debtor did not list all payments made to trade creditors within the 90 days prior to filing bankruptcy.

(6) Debtor wrote $10,000 in checks to himself for cash around the time of the state court judgment.

(7) Debtor overstated food and transportation expenses.

(8) Debtor listed his business as being worth $10,000, even though he knew that it had been appraised at over $150,000.

The court dismissed the case and retained jurisdiction to consider dismissal with prejudice, in its order of April 26, 1996. The following ruling and findings were made orally at the April 12th hearing, according to the transcript:

I think the evidence that's been presented today, if this were a Chapter 7, would warrant denial of Mr. Leavitt's discharge. If I simply dismiss this case without prejudice, there is nothing to bar him from refiling a Chapter 13, for example, tomorrow.

If I dismiss this case with prejudice, what that means is he cannot discharge the debt under any chapter, he can't file another 13 and discharge the debt; he can't file

---

**5.** Conversion was not an option since Debtor had received a Chapter 7 discharge in 1991, less than six years before. *See* § 727(a)(8).

a 7; he can't file an 11 and discharge the debt.

. . . .

My sense is that this Chapter 13 is not going to work. *The kind of non-disclosure and concealment that went on here seem to me to make this Debtor not a good candidate for any kind of a Chapter 13, where there's an operating business where expenses can be inflated to reduce net income.*

So what I'm prepared to do today is ... dismiss the case effective today, retain jurisdiction for a further hearing to determine whether it should be dismissed with prejudice.

(Emphasis added.)

The evidentiary hearing on cause for dismissal with prejudice took place on April 26, 1996. Debtor made an offer to sell or refinance the house to apply the $36,000 plus all of his disposable income to the Chapter 13 plan. The bankruptcy court considered that offer and other alternatives to dismissal. Debtor agreed to place $36,000 in an escrow account. However, Soto's attorney pointed out that such an option was unnecessary if the case were dismissed, for Soto could execute upon the Debtor's nonexempt business assets for the total amount of the judgment.

The court expressed its concern about the "overkill" effect of precluding discharge in subsequent bankruptcies that Debtor might legally file due to the *res judicata* effect of a dismissal with prejudice. The court stated, at first, that the only act justifying such an order was Debtor's purchase of the house with nonexempt estate assets during bankruptcy. The court then made the following oral finding:

On further reflection, *having had recalled to my mind the testimony presented at the prior hearing,* I am thinking further about what would face this court in the event of a future case. I believe that there would be no point in having a hearing—an evidentiary hearing in a new case, repeating the evidence presented in the prior case, and I do think the evidence is sufficient to support, and I do think it's appropriate, to grant dismissal with prejudice at this time.

(Emphasis added.)

The court's ruling was to dismiss the Chapter 13 case with prejudice effective retroactive to the date of the previous oral ruling, or April 12, 1996. The order stated that the court in making its ruling had reviewed the papers, evidence and argument and found good cause. The court did not issue written findings. Debtor timely appealed the order dated April 26, 1996.

## ISSUES

1. Whether cause existed to dismiss Debtor's Chapter 13 bankruptcy case with prejudice.

2. Whether the bankruptcy court abused its discretion by dismissing Debtor's Chapter 13 bankruptcy case with prejudice as a permanent bar to the discharge of existing debt.

## STANDARD OF REVIEW

■ The Panel reviews orders of dismissal of a bankruptcy case for an abuse of discretion. *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994); *In re Morimoto,* 171 B.R. 85, 86 (9th Cir. BAP 1994). However, a finding of bad faith is reviewed for clear error. *Marsch,* 36 F.3d at 828; *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■ Statutory construction involves an issue of law which we review *de novo. In re Warren,* 89 B.R. 87, 90 (9th Cir. BAP 1988).

## DISCUSSION

### A. Cause for Dismissal and Dismissal With Prejudice

The dismissal of a bankruptcy petition upon the request of a party in interest is governed by § 1307(c), which provides that the court may dismiss a case "for cause." While lack of good faith is not one of the enumerated causes, it is well established that lack of good faith in commencing a case is "cause" for dismissal of a Chapter 13 case. *Eisen*, 14 F.3d at 470; *In re Hopkins*, 201 B.R. 993, 995 (D.Nev.1996).

Section 349(a) governs a dismissal of a case "with prejudice." It provides:

(a) *Unless the court, for cause, orders otherwise*, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349 (1994) (emphasis added).

■ Section 349 establishes a general rule that dismissal of a case is without prejudice, but it also expressly grants a bankruptcy court the authority to "dismiss the case with prejudice thereby preventing the debtor from obtaining a discharge with regard to the debts existing at the time of the dismissed case, at least for some period of time." 3 COLLIER ON BANKRUPTCY § 349.01, at 349–2–3 (15th ed.1997). A dismissal with prejudice is a complete adjudication of the issues presented by the pleadings and a bar to further action between the parties. *In re Tomlin*, 105 F.3d 933, 936–37 (4th Cir.1997).

■ "Cause" under § 349 has not been defined by the Code. A review of the case law indicates that "egregious" conduct must be present, but that a finding of bad faith

constitutes such egregiousness.[6] "Generally, only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors ... will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts." *Tomlin*, 105 F.3d at 937. *See In re Huerta*, 137 B.R. 356, 374 (Bankr.C.D.Cal.1992) (where the court finds "cause" the case may be dismissed with prejudice to filing further petitions); *In re Moses*, 171 B.R. 789, 793–94 (Bankr. E.D.Mich.1994); *In re Walker*, 102 B.R. 612, 614 (Bankr.N.D.Ohio 1989) ("section 349 authorizes the court to punish abusive or bad faith filings by dismissing a case with prejudice") (citing *Lerch v. Fed. Land Bank of St. Louis*, 94 B.R. 998, 1001 (N.D.Ill.1989)); *In re Bradley*, 38 B.R. 425, 432 (Bankr.C.D.Cal. 1984) (courts should dismiss with prejudice "only when the debtor's conduct is particularly egregious and only after full opportunity for a hearing"); *In re Martin–Trigona*, 35 B.R. 596, 601–02 (Bankr.S.D.N.Y.1983); *In re Jerry's Blue Room Lounge, Inc.*, 19 B.R. 963, 964 (Bankr.E.D.Pa.1982).

■ Bad faith, which is generally held to be a cause for dismissal of a case under § 1307, is also cause for dismissal with prejudice under § 349(a). *See Morimoto*, 171 B.R. at 86–87 (affirming dismissal of Chapter 13 case "with prejudice" on grounds of bad faith filing).[7] The proper inquiry to determine bad faith is to apply a "totality of the circumstances" test, *Eisen*, 14 F.3d at 470, to determine:

whether the [debtors] acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.

*In re Goeb*, 675 F.2d 1386, 1390 (9th Cir. 1982).

---

6. Dismissal with prejudice has been called the "capital punishment of bankruptcy." *In re Merrill*, 192 B.R. 245, 253 (Bankr.D.Colo.1995). *See also Tomlin*, 105 F.3d at 937 (dismissal order barring subsequent litigation "is a severe sanction warranted only by egregious misconduct"); *In re Javarone*, 181 B.R. 151, 155 (Bankr. N.D.N.Y. 1995) (a dismissal with prejudice is "draconian relief reserved for circumstances

where there is a clear record of 'delay and contumacious conduct' by the debtor") (quoting *Durham v. Florida East Coast R. Co.*, 385 F.2d 366, 368 (5th Cir.1967)).

7. Therefore, the Panel's affirmance of the bankruptcy court's findings regarding Debtor's bad faith encompasses both the order of dismissal and the order of dismissal with prejudice.

In addition, bad faith exists where the debtor filed a petition only with the intention to defeat state court litigation. *In re Chinichian*, 784 F.2d 1440, 1445–46 (9th Cir.1986). Debtor bears the burden of proving that the petition was filed in good faith. *In re Powers*, 135 B.R. 980, 997 (Bankr.C.D.Cal.1991).

In the instant case, the evidence supported Soto's allegations that Debtor filed the Chapter 13 petition and proposed the Chapter 13 plan in bad faith. Debtor proposed a plan which made a minimal payment to Soto on a judgment debt that would be discharged in the Chapter 13 but would potentially be nondischargeable in a Chapter 7. We have previously held that the debtor's burden to prove good faith is "especially heavy" when a "superdischarge" is sought. *Warren*, 89 B.R. at 93; § 1328(a). Debtor failed to convince the trier of fact that his proposed plan utilized all of his disposable income, was equitable in its proposed payments, or was intended to repay his creditors. Debtor's promises to fix the problem by applying all of his disposable income or amending his schedules did not rectify his improper acts. The bankruptcy court found that Debtor's nondisclosure and concealment of information and assets and excessive expenses were factors in deciding to dismiss the case with prejudice because the assets and expenses of his operating business could be manipulated by Debtor in the bankruptcy. Furthermore, the court found that Debtor's nondisclosure of the receipt of $36,000 and purchase of exempt property during the bankruptcy was a factor in dismissing the case with prejudice. Based on the record, including Debtor's testimony, these findings were not clearly erroneous, and support the bankruptcy court's finding of bad faith.

Debtor contends on appeal that the bankruptcy court failed to make a specific finding of bad faith or "cause" in so many words. Our review of the record indicates that the court did make oral findings by reference to the facts established by the unrefuted evidence. A court's failure to make express findings does not require a remand if a complete understanding of the issues may be had from the record without the aid of separate findings. *Kanarek v. Hatch*, 827 F.2d 1389, 1391 (9th Cir.1987). In addition, the Panel may affirm on any basis fairly supported by the record. *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir.1995). "A reviewing court may look to facts in the record not specifically mentioned by the fact finder when such facts support the fact finder's factual findings and inferences." *In re Love*, 957 F.2d 1350, 1362 (7th Cir.1992).

The court's oral findings and the record clearly indicate that Soto's motion to dismiss was granted on the basis of Debtor's bad faith; the evidence supported that ruling. Further, the bankruptcy court stated that it found cause to dismiss with prejudice on the basis of the evidence presented at the hearings. While the court did not use the words "bad faith" in its conclusions, the finding can be understood from the allegations in the motion to dismiss, court's findings of Debtor's nondisclosure and concealment, and the evidence established at the hearing to which the court referred in making its ruling.[8]

Debtor also contends that the bankruptcy court's finding of bad faith was erroneous because he presented evidence that his omissions were inadvertent or not made with a dishonest motive. For example, he contends that Soto knew about the omitted items, so failure to list them did not prejudice Soto. However, the bankruptcy court was not required to find fraudulent intent on the part of Debtor.

> [N]either malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor illwill directed at creditors, or that debtor was affirmatively attempting to violate the law—malfeasance is not a prerequisite to bad faith.

*Powers*, 135 B.R. at 994.

Rather, the good faith test examines "the intentions of the debtor and the legal effect

---

8. In addition, at the April 12, 1996, evidentiary hearing, the court summed up the issues presented as a motion to dismiss for bad faith, as follows:

> THE COURT: So you're basically contending the plan was—case was filed in bad faith and

is being prosecuted in bad faith for a variety of reasons.

> [SOTO'S ATTY]: Yes.

> . . . .

> THE COURT: [T]his appears to be a motion to dismiss the case for a bad faith filing.

of the confirmation of a Chapter 13 plan in light of the spirit and purposes of Chapter 13." *Chinichian,* 784 F.2d at 1444; *see also Warren,* 89 B.R. at 90–91. Some of the relevant factors to be considered include:

the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Love,* 957 F.2d at 1357.

There was evidence on all of the above factors which disfavored Debtor. Therefore, the bankruptcy court's finding of bad faith on the part of Debtor was not clearly erroneous.

## B. Discretion to Bar Discharge

■ Debtor contends that the bankruptcy court abused its discretion by permanently barring his discharge rather than setting a temporary limit against refiling.

■ Section 349 provides a bankruptcy court with authority "both to bar subsequent discharge of existing debt and to bar successive petitions under § 109(g)." *Tomlin,* 105 F.3d at 938. The bankruptcy court's order simply stated "with prejudice." The order did not enjoin the filing of future bankruptcy petitions not related to this case.[9] Rather, based on the bankruptcy court's oral ruling, the order was intended to prevent Debtor from filing subsequent petitions to discharge

the *existing,* dischargeable debt. *See Martin–Trigona,* 35 B.R. at 601–02 (finding cause to dismiss with prejudice "at least as to debts that are dischargeable in the proceeding before the court that issued the injunction").[10]

The distinction between a bar to discharge and an injunction against future bankruptcy filings has been described as follows:

A dismissal with prejudice must be distinguished from an order prohibiting the debtor from filing a bankruptcy case for some period of time in the future. The former determines whether debts owed at the time of filing of the original bankruptcy petition can ever be discharged. The latter does not affect whether particular debts can be discharged, but determines whether the debtor has access to the bankruptcy court in the future.

3 COLLIER ON BANKRUPTCY § 349.02[3], at 349–10 (15th ed.1997).

A permanent bar to discharge of debts raises due process concerns.

[W]hen dismissal is predicated on grounds that would justify barring the debtor from discharge in the dismissed case or a subsequent case the court has the power to dismiss a case *with* prejudice. This rule must be limited by the requirements of due process. A summary finding of conduct that would bar a discharge under section 727 and a dismissal on that or any other ground may deny a debtor due process if the summary finding would thereafter have the same effect in a later case as a denial of discharge under section 727. Accordingly, the courts should proceed

---

9. The present order does not purport to enjoin a future bankruptcy filing to discharge new debts. *See* Charles Alan Wright & Arthur R. Miller, 9 FEDERAL PRACTICE & PROCEDURE § 2373, at 396 (1995) (dismissal with prejudice bars subsequent action on the same claim). Debtor contends in his Opening Brief that it was inequitable of the bankruptcy court to prevent him from "dealing" with tax debt, which may become dischargeable over time. That issue is not before us, and we do not decide today whether existing nondischargeable debt that becomes dischargeable at a later date would be considered the type of debt that the bankruptcy court has permanently barred from discharge.

10. Interestingly, the Fourth Circuit Court of Appeals has noted that it is common practice for a

bankruptcy court to employ the phrase "dismissed with prejudice" to refer to a temporary bar to filing another petition. *Tomlin,* 105 F.3d at 938–39. The phrase may thus trigger the usual remedy of § 109(g), which prohibits the filing by the debtor of any case under Title 11 for a period of 180 days. *Id.* Sometimes the order which states only "dismissed with prejudice" may, therefore, be ambiguous. This is not the case here, however, because the bankruptcy court specifically stated at the April 12, 1996, hearing that the effect of a dismissal with prejudice would be a bar against discharging the debt under any Chapter. The court also found that the evidence would support a denial of a discharge under Chapter 7. The court's order was an unambiguous, unqualified bar against the discharge of existing, dischargeable debt.

with caution in this area, and dismiss with prejudice only when the debtor's conduct is particularly egregious.... Moreover, a dismissal with prejudice should only be ordered after full opportunity for a hearing similar to the opportunity provided on a complaint under section 727 for denial of discharge.

3 COLLIER ON BANKRUPTCY § 349.02[2], at 349–9 (15th ed.1997) (emphasis in original).

Due process was provided in this case to ensure that Debtor had fair notice and hearing of the with-prejudice dismissal. Moreover, the bankruptcy court found that Debtor's conduct would justify a denial of discharge under § 727.

Debtor's argument also raises a question of statutory interpretation which was not directly raised by either party [11], i.e., whether the language of § 349(a) limits the prejudicial impact of a dismissal according to § 109(g).[12]

The second part of § 349 was added in 1984, the same time § 109(g) was added to the Code.[13] Section 349 provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; *nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(a) of this title.*

11 U.S.C. § 349(a) (1994) (emphasis added).

The amendment can be read to exclude from the "dismissal with prejudice" label any dismissal other than under the circumstances of § 109(g), i.e., a dismissal with prejudice may only bar a future bankruptcy filing, even as to existing debt, for no more than 180 days.[14]

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975). When the language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

Section 349(a) is not ambiguous, and plainly provides that the bankruptcy court may, at its discretion and for cause, bar the discharge of existing debt. Inherent in this authority is the power to bar subsequent bankruptcy petitions that seek to discharge such debt. *See Morimoto*, 171 B.R. at 86–87; *Tomlin*, 105 F.3d at 938 (section 349 provides for a permanent bar to discharge of existing debt with *res judicata* effect); *In re Frieouf*, 938 F.2d at 1103 (affirming dismissal with prejudice to refiling for three years as temporary denial of discharge of scheduled debts); *In re McClure*, 69 B.R. 282, 286 (Bankr.N.D.Ind.1987).

Furthermore, cases which have looked to the legislative history of § 349 note that it was intended to provide courts with authority to control abusive filings "beyond the limits of § 109(g)," even in cases where the bankruptcy court enjoined the filing by a debtor of any case under Title 11 for a period greater than 180 days. *See In re Herrera*, 194

---

**11.** The Panel may address this legal question. *In re Professional Inv. Properties of America*, 955 F.2d 623, 625 (9th Cir.1992) (new issue is "purely one of law" and "does not depend on the factual record developed below").

**12.** Section 109(g)(1) bars refiling for 180 days if the debtor's previous case was dismissed for willful failure to abide by orders of the court or to prosecute the case.

**13.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 352, 333 (1984). This act added new subsection (f) to § 109 to provide a 180-day bar to refiling, redesignated as subsection (g) in 1986.

**14.** There is authority for holding that a bankruptcy court may not enjoin the filing of a subsequent petition that is unrelated to the dismissed case beyond a 180-day limit. *See In re Frieouf*, 938 F.2d 1099, 1104 (10th Cir.1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). That issue is not before us, since the bankruptcy court's order did not enjoin unrelated filings for a specific time period. *See also In re Cooper*, 153 B.R. 898, 900 (D.Colo.) (recognizing that *Frieouf* decision is doubtful and unpopular), *aff'd*, 13 F.3d 404, 1993 WL 523197 (10th Cir.1993).

B.R. 178, 189–90 (Bankr.N.D.Ill.1996); *In re Lerch,* 85 B.R. 491, 493–94 & n. 2 (Bankr. N.D.Ill.1988), *aff'd sub nom., Lerch v. Fed. Land Bank of St. Louis,* 94 B.R. 998 (N.D.Ill. 1989).[15]

It was proper for the bankruptcy court to prevent further litigation of the same issues by barring indefinitely future abusive filings by Debtor related to the existing, dischargeable debt. Where the bankruptcy court found cause for a dismissal with prejudice, and due process requirements were met, the bankruptcy court did not abuse its discretion in dismissing Debtor's Chapter 13 case with prejudice.

## CONCLUSION

The evidence supported the bankruptcy court's dismissal of Debtor's Chapter 13 case on the basis of bad faith. The court held a separate evidentiary hearing on the issue of whether cause existed to dismiss with prejudice. The evidence supported the court's finding of cause, pursuant to § 349(a). The bankruptcy court did not abuse its discretion under the authority granted it in § 349(a) by dismissing the case with prejudice as a permanent bar to refiling bankruptcy to discharge existing, dischargeable debt. The order of April 26, 1996, is **AFFIRMED.**

15. *See also In re Jolly,* 143 B.R. 383, 388 (E.D.Va.1992) ("[S]o long as the dismissing court finds cause, a bankruptcy action may be dismissed with prejudice for 180 days, or more, without violating the terms of § 349(a) or, for that matter, § 109(g)."), *aff'd,* 45 F.3d 426, 1994 WL 717626 (4th Cir.1994); *In re Spear,* 203 B.R. 349, 354 (Bankr.D.Mass.1996); *In re Greenberg,* 200 B.R. 763, 768 (Bankr.S.D.N.Y.1996); *In re Belden,* 144 B.R. 1010, 1022 (Bankr.D.Minn. 1992); *In re Earl,* 140 B.R. 728, 740–41 (Bankr. N.D.Ind.1992); *In re Dilley,* 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991); *In re Hundley,* 103 B.R. 768, 771 (Bankr.E.D.Va.1989); *In re McKissie,* 103 B.R. 189, 193 (Bankr.N.D.Ill.1989); *McClure,* 69 B.R. at 286.